### CAVENDISH BRIDGE CLUB v. SOUTHERN BELL TEL. CO., et al.

Circuit Court, Dade County.
February 1, 1952.

Goldstein, Klein, Burris & Lehrman, Albert M. Lehrman, Ben Cohen, Miami Beach, for plaintiff.

Walton, Hubbard, Schroeder, Lantaff & Atkins, John H. Wahl, Jr., of counsel, Miami, for Southern Bell Tel. & Tel. Co.

Edward P. Swan, Miami, for the Attorney General.

Lewis W. Petteway, Tallahassee, for the Railroad & Public Utilities Commission.

CHARLES A. CARROLL, Circuit Judge.

The defendants in this suit are Southern Bell Tel. & Tel. Co., the members of the Railroad & Public Utilities Commission and the Attorney General. The cause came on to be heard on plaintiff's application for an injunction to restrain the defendants, particularly the telephone company, from removing its telephones.

The cause was filed yesterday, January 31, and was lodged in division H of this court presided over by Hon. J. N. Morris, one of the judges of this court, and an application for injunction without notice, which under our rules is termed an emergency application, was sought to be presented, and as Judge Morris was unavailable to hear the same at that time, under rule 3 of the rules of this court (adopted October 4, 1951) the matter was presented to me as an alternate to Judge Morris under the rule. I explain this because on one or more occasions, in opinions in cases from this circuit, the Supreme Court has commented on the fact that a case filed in a division presided over by one judge appeared to have been handled for no stated reason by another judge in another division of this court.

When application was made on January 31 for the injunction without notice, the injunction was not granted and notice was required to be given, including notice to the Railroad & Public Utilities Commission through a telegram sent to its general counsel. Counsel for defendants other than the commission appeared, in response to notice, and the commission made no request for postponement — and thus is considered before this court for the purpose of this hearing.

Plaintiff is chartered as a non-profit corporation, having its place of business or operation in Miami Beach. By letter dated January 25 the Attorney General notified the manager of the telephone company that through an investigation by his office "it has been determined" that telephone numbers used by plaintiff "have been used in violation of the laws of Florida, particularly the gambling laws," and demanded that the company terminate facilities at those numbers and remove the telephone facilities and equipment from the premises. Next, there was a

letter from the manager of the company to plaintiff notifying plaintiff of the Attorney General's letter and that telephone service would be discontinued on Friday, February 1—today.

The bill for injunction, after alleging the status of the parties and the organization and nature of the plaintiff, Cavendish Bridge Club, in paragraph 4 denies the law violations referred to or charged in the Attorney General's letter. Paragraph 6 refers to the fact that they will have no hearing or opportunity to be heard and challenges the propriety of the discontinuance on that basis. In paragraph 8 plaintiff contends that it will not in the future be guilty of any such violation of laws, and again denies past violation. The bill also claims extensive and essential use of telephones, and alleges the inconvenience to its patrons and the detriment to its operation which removal of telephones would have.

No other pleadings were filed at this time. This court is of the opinion that defenses or equities of the character which are set up in this bill—that is, denial of law violation or disclaimer of intended violation in the future and a showing of the importance of facilities which are about to be removed—are essentially and definitely questions which should come before the Railroad & Public Utilities Commission for its consideration, first, as to whether there is evidence of law violations which would warrant elimination of the service, and, second, whether the party, even if guilty of violations, makes a showing which would reduce or eliminate the penalty and permit restoration, or continued uninterrupted use of the telephone service.

The court cannot overlook the fact that if the commission hears such matters, it will have the benefit of uniformity in its rulings and the opportunity to make and apply appropriate policies in connection therewith.

On the other hand, if the courts undertake to hear and decide the matter on such points or issues, as is applied for in the case of this bill now before the court, then there will be many divergent views and policies based on the differing decisions depending upon what circuit judge happens to be applied to or hears the matter of the many circuit judges throughout the state, and even of the various judges in a circuit.

In saying the foregoing, this court is aware that it would be appropriate for a telephone subscriber to make an application to the court, based on certain equities which might exist in addi-

tion to or different from those which could be expected to be heard by the commission, or which could not be heard by the commission in time to prevent irreparable injury—such as, for example, a threatened termination of service of an innocent party through mistaken identity, or in cases which might stem from malice or arbitrary official action designed to harm a party and not in the interests of administration of the statute.

This court has noted the contention of the plaintiff that the state law which appears to permit the removal of its telephones without its having an opportunity to be heard on the charge or accusation which forms the basis for the removal is an arbitrary action from which this court should accord injunctive relief. Section 365.08 of the statutes provides that the utility or telephone company shall terminate the service upon receiving a notice from the Attorney General or certain other law enforcement officials in writing (in effect, upon accusation alone), and the utility has no alternative but to proceed to terminate the service in view of section 365.13, which imposes a misdemeanor penalty for its failure unless the utility should be relieved by a court.

Section 365.08, relating to discontinuance of the service and removal of the facilities, also provides as follows:

"Any person aggrieved by the action of the utility shall be entitled to present the matter to the commission for its review and determination. If, after consideration, the commission determines that said party is entitled to said facilities and service, and that the same will not be used in the future for unlawful purposes, then and in that event, the commission may authorize the utility to provide said facilities and service."

In the handling of these cases a situation has arisen which tends to result in making this statute inoperative which is traceable directly to the fact that the commission will not grant a hearing to a party whose telephone is about to be removed under the process provided for in the Act until after the telephone facilities have been actually terminated and removed. That results in one of two things. Either the party has to suffer the inconvenience of going without its telephone for the period required to have the hearing before the commission, or, to prevent that, must apply to a court of equity and obtain an injunction against removal of its telephone on the same equities or grounds which would be asserted before the commission if and when a hearing should be had before that body. In other words, be-

cause a hearing will not be granted by the commission without actual removal of the telephones or termination of the service, the commission is depriving parties of what appears to this court to be the commission's opportunity and duty to try or hear those matters, rather than for the various courts to hear them. The policy of the commission not to hear or consider those matters until actual removal of facilities is shown by past cases and from direct communication to such effect sent by the commission to the courts.

In the opinion of this court it is not necessary for the telephones to be removed before the commission may grant such a hearing. The above quoted portion of the statute can as well be construed as authorizing the hearing upon threatened action of the telephone company, based upon a notice it shall have received from the Attorney General. The part of the statute which refers to the hearing does not expressly state that it can be had only after termination of facilities. It may be had when any person is aggrieved by the *action of the utility*. When a utility informs a subscriber that a letter has been received from the Attorney General containing information which, under this Act, requires it to remove the facilities, and that the company is going to remove them on a designated date—that is definite *action* by the utility affecting the telephone service which can prompt a hearing before the commission.

Such a construction and administration of the state law relating to this subject would tend to preserve it and render it effective for the purpose for which it was enacted. In this connection, it should be noted that the statute (section 365.07) makes provision for an advance hearing before termination or removal in the case of what is called in the Act a private wire, that is, a leased wire, but the statute (in the next section) dealing with individual subscribers such as the one involved in this case does not expressly provide for that advance hearing.

Unless section 365.08 can be construed, as this court has indicated, to authorize and sanction a hearing to an individual subscriber before his telephone shall be removed, or unless the commission so administers the Act, then the plaintiff in this case may reapply to this court for other or further injunctive relief in this cause.

Accordingly, it is ordered, adjudged and decreed as follows:

1. That the defendant, Southern Bell Tel. & Tel. Co., its of-

ficers, agents, servants and attorneys, be and each of them hereby are restrained and enjoined from discontinuing, disconnecting or removing the telephone service and facilities of the plaintiff under numbers 58-5148 and 58-9842 at the plaintiff's location at 408 16th Street, Miami Beach, as was stated or threatened to be done by said company on this date under its letter to the plaintiff dated January 29, 1952, until such time as the Railroad & Public Utilities Commission may have conducted a hearing involving the plaintiff on the charges or accusations which initiated the said utility's action in this instance, and then only in accordance with a ruling or determination based upon such a hearing by the commission, or until further order of this court.

2. The injunction granted hereinabove is conditioned on the requirement that the plaintiff shall, within not more than ten days after the date of this order, file an application with the defendant, Railroad & Public Utilities Commission, at its office in Tallahassee, citing its reasons and grounds why its telephone facilities should not be removed as directed by the Attorney General, and furnish to the other parties in this case, or their attorneys, written copies of such application and of any documents or supporting papers filed therewith.

3. That upon receipt by the commission of such application of the plaintiff for hearing, the defendants, Wilbur C. King, Jerry M. Carter and Richard A. Mack, as members of and constituting the Railroad & Public Utilities Commission, are ordered and directed, thereupon, forthwith and without any undue delay to conduct or cause to be conducted a hearing on plaintiff's said application, and such hearing shall be provided and held notwithstanding the fact that the action which is complained of is not removal of the telephones, but the telephone company's threatened removal and the announcement of intended removal which would have taken place except for the injunctive provisions of this order.

4. The plaintiff shall file herein its injunction bond made payable to the defendant, Southern Bell Tel. & Tel. Co., in the principal sum of $1,000 with good and sufficient surety to be approved by the clerk of the court conditioned as required by law to pay all costs, damages and expenses, including said defendant's attorney's fees in the event it shall be finally determined that the injunctive order herein granted was improvidently issued, or the bill dismissed.